# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| MELISSA WILKES and BENJAMIN WILKES, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CARESOURCE MANAGEMENT GROUP CO., CARESOURCE INDIANA, INC., and ELIZA CORPORATION,<br><br>Defendants. | Case No. 4:16-CV-38 JVB |

## OPINION AND ORDER

This matter is before the Court on Defendants' Caresource Management Group Co. and Caresource Indiana, Inc.'s ("Caresource"[1]) motion for summary judgment (DE 51). Plaintiffs Melissa Wilkes and Benjamin Wilkes filed a two-count complaint alleging violations of the Telephone Consumer Protection Act.[2] Defendants seek summary judgment on both counts.

**A. Summary Judgment Standard**

A motion for summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after

---

[1] There is a third Defendant, Eliza Corporation, who has not joined in the motion or filed its own motion for summary judgment.

[2] Plaintiffs' Complaint was filed on behalf of themselves and all others similarly situated, but no class has been certified.

adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If the moving party supports its motion for summary judgment with affidavits or other materials, it thereby shifts to the non-moving party the burden of showing that an issue of material fact exists. *Keri v. Bd. of Trust. of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006).

Rule 56(e) specifies that once a properly supported motion for summary judgment is made, "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts to establish that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *Keri*, 458 F.3d at 628. A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249–50 (1986).

### B. Facts

Having read all the briefs in this case, including Plaintiffs' proposed sur-response, and

having reviewed all evidence, and viewed it in the light most favorable to the Plaintiffs, the Court finds the following facts pertinent to Caresource's motion for summary judgment: Plaintiffs are a husband and wife who applied for health insurance coverage under the Affordable Care Act through the Health Insurance Marketplace ("Marketplace") at healthcare.gov. In their application, the Plaintiffs provided Melissa Wilkes's cellular telephone number. The website contained a disclosure that an applicant's information may be shared with insurance companies that issue plans.

When consumers select a plan and submits an application to the Marketplace, their applications (including contact information) are reduced to an extract file, which is then transmitted to the insurance provider. Once an insurer receives the extract file, they are bound to provide coverage to the applicant. Plaintiffs received coverage from Caresource for 2015 following this method, and Caresource received Plaintiffs contact information through the extract file.

In August 2015, Plaintiffs' fourth child was born, and they sought to add him to their insurance coverage. During this process, Plaintiff Melissa Wilkes called and spoke with Caresource representatives. She provided both her telephone number and her husband's telephone number to the representatives.

Plaintiffs made their final premium payment in November 2015, and as mandated by the Affordable Care Act, their health insurance policy automatically renewed for the 2016 calendar year. On January 28, 2016, Melissa called Caresource requesting that their enrollment be terminated. Caresource directed her to instead terminate coverage through the Marketplace, which she did. Similar to an application for coverage, the termination of coverage is provided to an insurance company through an extract file. Defendants received the extract file terminating

Plaintiffs' coverage effective February 12, 2016. However, Caresource was processing claims for the Wilkes family through May 2016.

Caresource contracted with Defendant Eliza Corporation ("Eliza") to place automated "welcome calls," which were to "share information with Indiana Marketplace members regarding their healthcare benefits and assist them in accessing health care providers and wellness programs." (DE 71 at 10). Five of these welcome calls were placed to Melissa's cell phone number between April 14 and April 27, 2016, well after the family's coverage had ended. On April 27, 2016, Melissa called Caresource inquiring about the automated calls. A representative of Caresource offered to put Melissa on a do-not-call list, and she accepted that offer. No further calls were made to Plaintiffs after that date.

### C. Analysis

The issues before the Court are simple. First, the Court must decide whether Defendants had prior express consent to call Plaintiffs under the Telephone Consumer Protection Act. Next, if Defendants had prior express consent to call the Plaintiffs, the Court must decide when that consent was revoked. If any calls were made to the Plaintiffs after the consent was revoked, the Plaintiffs prevail. If not, the Defendants prevail.

The Telephone Consumer Protection Act ("TCPA") states that "[i]t shall be unlawful for any person . . . to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service." 42 U.S.C. § 227(b)(1)(A). Persons can give consent to be called simply by providing their phone numbers as a contact number with a company. *See In Re Rules and Regulations Implementing the Telephone Consumer*

*Protection Act of 1991*, 7 FCC Rcd. 8752, 8769 ¶ 31 (1992). Automated calls must be "reasonably related" to the purpose for which a person provides their telephone number. *Blow v. Bijora, Inc.*, 855 F.3d 793, 804-5 (7th Cir. 2017). "[A]n effective consent is one that relates to the same subject matter as is covered by the challenged calls." *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037, 1044-5 (9th Cir. 2017).

In the present case, Plaintiffs gave Defendants express consent to be called. They provided Melissa's cell phone number as part of their application for insurance, which was then transmitted to Defendants via the extract file. Furthermore, while the welcome calls were made to Plaintiffs mistakenly after they had ended their coverage and did not apply to them, the content of those messages – health care benefits, providers, and wellness programs – were reasonably related to the insurance coverage for which Plaintiffs originally provided their cell phone number.

Having decided that Defendants had prior express consent to call Plaintiffs at their provided cell phone number, the Court next turns to when Plaintiffs revoked their consent to be called. Plaintiffs initiated their consent to be called through submitting their application for insurance on the Marketplace. If, in turn, Plaintiffs' consent to be called was revoked when they terminated their coverage through the Marketplace, Defendants' welcome calls would be in violation of the TCPA. On the other hand, if, as Defendants argue, Plaintiffs did not revoke their consent to be called until April 27, 2016, when Melissa Wilkes accepted a Caresource representative's offer to be placed on a do-not-call list, then the TCPA was not violated.

The Federal Communications Commission has stated that "[c]onsumers have the right to revoke consent, using any reasonable method including orally or in writing*." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961, 7996 ¶ 64 (2015). *Van Patten v. Vertical Fitness Group, LLC*, 847 F.3d 1037 (9th Cir. 2017),

a Court of Appeals for the Ninth Circuit case, is instructive. In *Van Patten*, the plaintiff signed up for a gym membership, and in doing so, provided his cell phone number. *Id*. at 1039. He called the gym to cancel his membership three days later. *Id*. Three years later, the gym, under new ownership, sent the plaintiff automated text messages advertising the change and inviting the plaintiff to return as a member of the gym. *Id*. The plaintiff contended that he revoked his consent by cancelling his gym membership and "sufficiently communicated his desire to no longer be contacted." *Id*. at 1048. The court disagreed, holding that "[r]evocation of consent must be clearly made and express a desire not to be called or texted." *Id*. A clear revocation, according to the court, could include simply telling the defendant not to contact him on his cell phone. *Id*.

In the present case, simply canceling insurance coverage on February 12, 2016, through the Marketplace was not sufficient to revoke consent to be called under the TCPA. The welcome calls that were made to her cell phone between April 16 and April 27, 2016, were, therefore, not in violation of the TCPA. On the other hand, Melissa plainly and unequivocally told Defendants she no longer wished to receive calls on April 27, 2016. This was effective revocation of her consent to be called, which the Defendants honored. Accordingly, Defendants are entitled to summary judgment.

**D. Conclusion**

For the foregoing reasons, Defendants' Caresource Indiana Inc. and Caresource Management Group Co.'s motion for summary judgment (DE 51) is GRANTED. Defendants' motion for a hearing (DE 54) and Plaintiffs' motions to take judicial notice (DE 73), motion for leave to file surresponse (DE 81), and motion to seal (DE 82) are DENIED as moot.

SO ORDERED on September 27, 2018.

s/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE